**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0068n.06
Filed: November 4, 2004

**No. 03-3435**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GUANG HUA HUANG, | ) | |
| | ) | |
| *Petitioner-Appellant*, | ) | |
| | ) | |
| v. | ) | On Appeal from the Board of |
| | ) | Immigration Appeals |
| JOHN ASHCROFT | ) | |
| | ) | |
| *Respondent-Appellee*. | ) | |

**Before:** **BOGGS, Chief Judge; GUY, Circuit Judge; and STEEH, District Judge.**[*]

**BOGGS, Chief Judge.** Guang Hua Huang appeals from denial by the Board of Immigration Appeals of his application for asylum and associated relief. Though the Board of Immigration Appeals did not abuse its discretion in denying his motion to remand, the Board of Immigration Appeals and the Immigration Judge lacked substantial evidence to support their adverse credibility determination. We now reverse and remand.

**I**

Huang is a citizen of China from Fujian Province, where he was born in 1965. In June 1993, Huang filed an asylum application with the INS. In March 1997, the INS presented Huang with an

---

[*]The Honorable George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

order to show cause and requested deportation. Huang sought asylum under 8 U.S.C. § 1158 and withholding of removal under 8 U.S.C. § 1231(b)(3).[1]

Huang's asylum claim is based on China's restrictive family planning policies. He testified at a hearing before an Immigration Judge ("IJ") in 2000 as follows. After he and his wife had their first child together in 1988, the government forced her to use an intra-uterine device ("IUD") as a form of birth control. Huang arranged for his wife to visit a private doctor who removed the device. Thereafter she became pregnant again; and the couple agreed that the wife should hide at the house of Huang's aunt. On December 5, 1989, his wife visited Huang at their home. While there, government officers came and forcibly removed her. During the ensuing struggle, an official struck him on the arm with a bowl. His wife was then taken to the hospital where she was forced to have an abortion. Following the abortion, his employer forced him to pay a substantial fine at work and publicly apologize to his co-workers.

His wife was again forced to use an IUD in October 1991. The government periodically examined her to make sure she continued to use the contraceptive device. Despite having one of these appointments in December 1992, the couple discovered in January 1993 that his wife had been pregnant for almost two months. Because they feared that the government would force her to have another abortion, they hid at a remote farm for Chinese who had fled Indonesia. There, he said, the

---

[1]The Immigration Judge also denied relief under the Convention Against Torture. Huang did not request relief on this ground. J.A. 139. Regardless, Huang does not mention the Convention in his appellate brief and so he has waived relief on that ground. *United States v. Mick*, 263 F.3d 553, 567 (6th Cir. 2001); *see also Abati v. Ashcroft*, 101 Fed. Appx. 626, 627 (6th Cir. June 17, 2004) (unpublished opinion) (holding that Convention Against Torture claim is waived because it is absent from appellant's brief).

couple decided to come to the United States. He left by boat in February 1993. Though his wife planned to travel by plane, she ultimately stayed in China where she gave birth to the couple's second child, a son, in August 1993. After this second birth, the government forced his wife to undergo tubal ligation, resulting in her sterilization.

Huang filed an asylum application with the assistance of a service center in New York. Because he could not read, write or speak English at the time, the center prepared the asylum application for him. In 1997, Huang had an asylum interview, for which the center provided him with a translator. Huang claimed that the translator was terrible and, as a result, he no longer used the service center. Though the procedural history is somewhat complex, Huang finally had his deportation hearing before the IJ in May 2000. For this hearing, Huang brought with him documentary evidence corroborating his version of events. Many of these documents had been submitted to the INS forensics laboratory, which could neither confirm nor deny the authenticity of the documents.

The IJ ruled against Huang from the bench. She denied him relief because she did not find him credible. On appeal before the Board of Immigration Appeals ("BIA"), Huang presented additional documentary evidence. The BIA treated the introduction of such evidence as a motion to remand, which it subsequently denied. As to the adverse credibility finding, the BIA adopted the IJ's decision.

**II**

Huang argues on appeal that the Board of Immigration Appeals abused its discretion when it declined to remand the case in light of the new documentary evidence he provided. In the immigration context, a motion to remand is a motion to reopen a decision by an IJ before the BIA has reached its final decision. *See* 8 C.F.R. § 1003.2(c)(4) ("A motion to reopen a decision rendered by an [IJ] . . . that is pending when an appeal is filed . . . may be deemed a motion to remand for further proceedings before the [IJ] . . . ."); *see also Fieran v. INS*, 268 F.3d 340, 344 n.2 (6th Cir. 2001). The regulations governing motions to remand/reopen state in relevant part that "[a] motion to reopen proceedings shall not be granted unless it appears to [the BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. . . ." 8 C.F.R. § 1003.2(c)(1). The BIA refused to remand the proceedings in light of this regulation. We review the BIA's denial of a motion to remand for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323 (1992). We conclude that the BIA did not abuse its discretion.

For his appeal before the BIA, Huang presented new documentary evidence that responded to questions raised by the IJ at his earlier hearing. During that hearing, the IJ inquired as to why he had not presented a Chinese form of identification referred to as a household certificate or records to confirm his relationship to his alleged children, such as school records. J.A. 214, 96. Huang presented these documents for his appeal. J.A. 13-61. These documents, however, do not meet the standard set out in § 1003.2(c)(1). The standard is conjunctive; the new evidence must be material *and* not available *and* not discoverable at the previous hearing. Thus, although the documents are material, they do not merit a remand because Huang offers no reason why the documents could not have been presented at the original hearing other than that he had not thought to present them.

Under the plain language of § 1003.2(c)(1), Huang's new documentary evidence was not sufficient cause to remand the proceedings to the IJ for further fact-finding. The BIA therefore did not abuse its discretion in refusing to do so.

**III**

Huang primarily appeals the BIA and IJ's denial of asylum on the basis of an adverse credibility determination.[2] The decision to grant asylum is a two-step inquiry. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). The first step is whether the applicant qualifies as a refugee. Only if the petitioner qualifies as a refugee may the Attorney General choose to exercise his discretion and grant asylum. *Ibid.* In this case, the IJ and the BIA ended the inquiry at the first step by determining that Huang did not qualify as a refugee. It is this determination that we now review on appeal. A refugee is an alien who is "unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Section 1101(a)(42) further clarifies: "For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization ... shall be deemed to have

---

[2]Huang further appeals the determination to deny his request for withholding of removal. The grounds for withholding of removal are the same as for asylum, except that instead of proving a "well-founded fear of persecution," 8 C.F.R. § 208.13(b), the applicant "must demonstrate a clear probability that he would be subject to persecution." *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). Huang then faces the same question, just with "a more stringent showing of truth." *Ibid.* Therefore, a determination that Huang is not eligible for asylum forecloses discussion of withholding of removal. *Ibid.*

been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42). The BIA has previously

decided that a husband "stand[s] in his wife's shoes" under this rule and can receive asylum because

of his wife's forced sterilization or abortion. *Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir. 2003)

(*quoting In Re C- Y- Z-*, 21 I. & N. Dec. 915 (BIA 1997)).

In this case, Huang was denied refugee status because the IJ and the BIA did not find him

credible. *E.g. Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (holding that an adverse credibility

determination is sufficient to deny asylum). When the BIA adopts the decision of the IJ, which the

BIA did in this case as to the credibility determination, we directly review the IJ's decision. *Denko*

*v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). We review an adverse credibility determination under

the substantial evidence test. This court can reverse only if "any reasonable adjudicator would be

compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 703 n.2

(recognizing lingering confusion over the proper standard but "officially adopt[ing]" substantial

evidence).

The IJ based her adverse credibility determination on three inconsistencies that she claims

"go to the very heart of respondent's claim." J.A. 99. First, the IJ noted that Huang presented a

document stating that his wife was not pregnant on December 5, 1992 when Huang testified that she

was pregnant in November 1992. Second, Huang did not mention his second child, his son, in his

asylum application and there is no evidence that the son was mentioned in his 1997 asylum

interview.[3] Third, Huang claimed at his deportation hearing that he arrived in the United States in

---

[3]The only record from the interview is not a transcript, but rather only a short summary produced by the officer who conducted the interview.

early March 1993 when he originally claimed in his asylum application and 1997 asylum interview that he arrived on May 28, 1991. The first inconsistency is not supported by the record. As to the second and third inconsistencies, we cannot agree with the IJ that these inconsistencies go to the heart of Huang's claim of past persecution. We therefore conclude that the IJ's adverse credibility determination is not supported by substantial evidence.

The first inconsistency cited by the IJ is simply not an inconsistency. The IJ notes an inconsistency between Huang's testimony and one of the documents he produced. Though Huang testified that his wife was pregnant in November 1992, he produced a document from the Chinese birth control office stating that she was not pregnant as of December 5, 1992. The IJ argues that this apparent contradiction lessens Huang's credibility and shows that his documentary evidence is unreliable. But there is no contradiction here. Huang claimed throughout the hearing that his wife showed no signs of pregnancy at the December 5th examination. As he testified, he and his wife were therefore surprised to learn in January that she had been pregnant for around two months. *See* J.A. 179. Moreover, far from contradicting his testimony, the document in question actually bolsters Huang's claim. That document shows that she showed no signs of pregnancy when she was evaluated on December 5, 1992 and that she was five months pregnant on April 25, 1993. *See* J.A. 466. Counting back, Huang's wife became pregnant in late November 1992, just as Huang claimed. The IJ is incorrect that Huang's testimony and documentary evidence are inconsistent on this point.

As to the second and third inconsistencies, the IJ is correct that Huang's asylum application and 1997 interview record do not mention a second child and list his arrival date as May 1991 rather than March 1993. In *Yu v. Ashcroft*, this court recently recognized a distinction between major and

minor inconsistencies. *See* 364 F.3d at 703-04 (citing *Valderrama v. INS*, 260 F.3d 1083, 1085 (9th Cir. 2001) and *Senathirajah v. INS*, 157 F.3d 210, 221 (3d Cir. 1998)). Major inconsistencies go to the heart of a petitioner's asylum claim. *Ibid.* In contrast, minor inconsistencies reveal nothing about petitioner's persecution and therefore are an inadequate basis for an adverse credibility finding, though they can give supplemental support to an adverse credibility finding premised on other grounds. *Id.* at 704. Though the inconsistencies cited by the IJ are supported by the record, we cannot agree that they go "to the heart" of Huang's asylum claim. *Ibid.* at 703-04.

Huang seeks asylum under the special provision of § 1101(a)(42) that deals with cases of forced abortions or sterilizations. Under this provision, the BIA has determined that the spouse of someone who has been forced to undergo an abortion or sterilization qualifies as having suffered past persecution on account of political opinion. *See In Re C- Y- Z-*, 21 I. & N. Dec. at 919. In this case, Huang alleges that his wife had suffered from both a forced abortion and sterilization. He claims Chinese officials forced his wife to undergo an abortion in 1989. He also alleges that after his second child was born in 1993, she was forcibly sterilized. Under § 1101(a)(42), either of these events would be grounds for establishing past persecution. As to the sterilization, the inconsistencies noted by the IJ may cast doubt as to Huang's relationship to the child, but not as to whether the sterilization occurred. As to the abortion, these inconsistencies in no way suggest that it did not occur. To the contrary, Huang gave detailed testimony about the events leading to and following his wife's abortion, none of which is internally inconsistent or inconsistent with other aspects of his depiction of events.

We therefore cannot say that the inconsistencies relied on by the IJ go to the heart of Huang's claim. Because we believe that any reasonable adjudicator would be compelled to conclude that Huang was credible in describing his wife's forced sterilization and abortion, we now REVERSE the IJ and BIA's adverse credibility determination. We accordingly remand this case to the BIA for further consideration.[4]

---

[4]Appellant argued in his brief that if we reverse the IJ's adverse credibility finding, we should adopt the reasoning of *He v. INS*, 328 F.3d 593, 603-05 (9th Cir. 2003). In that case, the court held that when it reverses an adverse credibility finding in an asylum claim brought under § 1101(a)(42), remand to the BIA for further consideration of refugee status is inappropriate. *Id.* at 603. As conceded at oral argument, remand to determine whether Huang qualifies as a refugee is the appropriate remedy.