NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0215n.06
Filed: March 25, 2005

No. 03-4317

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GODFREY NWAKANMA, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | **ON PETITION FOR REVIEW** |
| v. | ) | **OF AN ORDER OF THE BOARD** |
| | ) | **OF IMMIGRATION APPEALS** |
| ALBERTO GONZALEZ, Attorney General | ) | |
| of the United States of America, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; EDGAR, District Judge.*

**R. ALLAN EDGAR, District Judge**. Petitioner-appellant Godfrey Nwakanma, a citizen of Nigeria, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming, without opinion, an immigration judge's ("IJ") decision to deny his claims for asylum and withholding of removal under the Immigration and Nationality Act, and for relief under the Convention Against Torture. Petitioner contends that the IJ erred in finding that his testimony was not credible. We **GRANT** the petition for review, **VACATE** the decision of the BIA, and **REMAND** for a new hearing before a different IJ.

---

* The Honorable R. Allan Edgar, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

-1-

**I.**

A committed Christian, Nwakanma asserts that he was subjected to persecution by Muslim extremists because of his religious beliefs and actions in support of those beliefs. After graduating from a Nigerian university, Nwakanma went to Kebbi, a state in northern Nigeria, to perform a year of national service in 1997. His contentions are that, while there, he became active with Christian groups sponsoring various school and public programs. He helped to establish a Christian church in Kebbi. In May 1997 he says that he was physically beaten for spreading Christianity; his abode was burglarized multiple times; and he was accused of desecrating the Koran after pages of the book were found in his bathroom. He was arrested and tried on the desecration offense, but these charges were eventually dropped due to lack of evidence. In October 1997 the pastor of the Christian church in Kebbi was kidnapped. As a consequence, riots ensued, houses were burned, and the Christian church was burned. Certain Muslims blamed the riots on Nwakanma and threatened his life.

Due to these threats Nwakanma fled to Lagos in the south. In June 1998 two men came to his residence and threatened to kill him if he did not leave the country. Fearing for his life, Nwakanma fled to the Republic of Ghana to live with his sister. While there in August 1999, two men, looking for Nwakanma, visited his sister and threatened to kill both Nwakanma and his sister. Nwakanma then moved to another location in Ghana to live with a Mr. Kwame. Muslim extremists then came to this location, threatened and beat Kwame,

and demanded that he produce Nwakanma.  In October 1999 Nwakanma fled to the United States.

The IJ, in an oral opinion, found that Nwakanma's testimony was not credible.  For that reason the IJ concluded that Nwakanma had not shown that he was entitled to any of the relief sought.  Adopting the IJ's decision, the BIA affirmed the IJ without opinion.

## II.

When the BIA affirms the IJ without opinion, as here, this Court directly reviews the IJ's decision as the final administrative order.  *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005); *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004).  The standard by which we review the facts found by the IJ is highly deferential.  Such findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005); *Yu*, 364 F.3d at 702. This standard does not mean, however, that we must accept the IJ's credibility findings *carte blanche*.  Rather, we must still subject these findings to meaningful judicial review.  In this case we are compelled to find that the IJ's credibility findings are without support.

In support of the adverse credibility finding, the IJ pointed to various perceived inconsistencies between Nwakanma's asylum application and his testimony.  First, the IJ found that Nwakanma provided certain facts in his asylum application that he did not

describe in his testimony until prompted by the IJ.[1]  Second, the IJ found that Nwakanma

provided dates for specific events in his asylum application but struggled to remember these

dates when testifying.[2]  Third, the IJ found that Nwakanma described burglaries of his Kebbi

home in his asylum application but did not discuss these burglaries during his testimony.

Fourth, the IJ deemed Nwakanma's testimony that the two men who threatened him in Lagos

also requested money for property losses during the Zebbi riots inconsistent with the asylum

application because Nwakanma did not include this fact in the application.  Fifth, the IJ

deemed Nwakanma's testimony that two men came looking for him at Kwame's house in

Ghana inconsistent with his asylum application which indicates there were three men.  Sixth,

and finally, the IJ deemed Nwakanma's testimony that Muslim extremists went to his

family's home searching for him on two occasions inconsistent with his asylum application

which does not indicate the frequency of such searches.

---

[1] Such facts include the following: Nwakanma's application indicates that Nwakanma reported the May 1997 beating to the zone inspector, but he did not testify to this fact until prompted by the IJ; in his application Nwakanma indicated that the local government chairman said Nwakanma deserved the treatment by the Muslims, but he did not testify to this fact until prompted by the IJ; in his application Nwakanma included the names of two men who threatened him in Lagos, but he could not recall the names when questioned by the IJ.

[2] The IJ found discrepancies in Nwakanma's testimony regarding the following dates: when the pastor of Nwakanma's church was kidnapped (July or October 1997); when Nwakanma went from Kebbi to Lagos (June or October 1997); when he went from Lagos to Ghana (June or July 1998); when two men came searching for him at his sister's house (August 1998 or 1999); and when he left for the United States (early-September or late-October 1999).

The IJ's adverse credibility finding suffers from two specific problems. First, many of the IJ's identified inconsistencies simply are not actually inconsistent. For example, the IJ found that Nwakanma's asylum application described two burglaries of his room but that Nwakanma failed to discuss these burglaries in his testimony. Contrary to the IJ's perception, Nwakanma testified to these burglaries at least two times on direct examination.

Further, Nwakanma's testimony regarding the dates of specific events does not reflect any inconsistency. To be clear, in his testimony Nwakanma initially struggled to recall the date of each event but, in the end, testified consistent with his asylum application. For example, Nwakanma initially indicated his pastor was kidnapped in July 1997; subsequently Nwakanma corrected that mistake testifying, consistent with his application, that his pastor was kidnapped in October 1997. Nwakamna's testimony regarding the dates of the other four events is identical to the statements made in his asylum application.

Finally, that Nwakanma provided certain facts in his asylum application not described in his testimony until prompted by the IJ does not mean that Nwakanma's testimony is inconsistent with his application. Specifically, failure to testify to details included in the application—such as reporting the May 1997 beating to the area zone inspector—until questioned by the IJ does not render the two inconsistent. Such a failure may be an omission, but it is not an inconsistency.

Second, and more importantly, to the extent there are inconsistencies between Nwakanma's asylum application and his testimony, the inconsistencies do not support an adverse credibility finding. "An adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They 'cannot be based on an irrelevant inconsistency.'" *Sylla v. I.N.S.*, 388 F.3d 924, 926 (6th Cir. 2004) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 619 n. 2 (6th Cir.2004)). Indeed, "'[i]f discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'" *Id.* (quoting *Daneshvar*, 355 F.3d at 623).

The actual inconsistencies identified by the IJ in this case are irrelevant and do not support an adverse credibility finding. These inconsistencies are not attempts by Nwakanma to enhance his claims of persecution. For example, whether two men or three men were searching for Nwakanma at Kwame's house in Ghana and whether Muslim extremists visited his family's home more than twice in search of Nwakanma are irrelevant. At bottom, men were searching for Nwakanma to persecute him for spreading his religious beliefs. Discrepancies between the number of men — two or three — and the number of visits to his family's home — once vs. more than twice — do not materially enhance Nwakanma's claim of religious persecution and cannot support an adverse credibility finding. Similarly, to the extent the IJ's other perceived inconsistencies actually represent discrepancies between

Nwakanma's testimony and his asylum application, such inconsistencies do not enhance his claims of persecution and do not support an adverse credibility finding.

The IJ himself recognized that "many of these discrepancies by themselves are not necessarily fatal to an asylum application." Nonetheless, the IJ concluded that when the inconsistencies are aggregated, they mean that Nwakanma was not credible. Respondent also advanced this proposition at oral argument. Respondent's contention defies the laws of mathematics: the sum of many zeros nonetheless equals zero. To put it differently, a whole lot of nothing equals nothing.

### III.

Because on the record before us we are compelled to question the IJ's conclusion that Nwakanma was not credible, we **GRANT** Nwakanma's petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings before a different IJ to determine whether Nwakanma is entitled to the relief he seeks.