**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0868n.06
Filed: October 25, 2005

**Case No. 04-3397**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MAJID MANSOUR ZEITO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES BOARD OF** |
| | ) | **IMMIGRATION APPEALS** |
| ALBERTO R. GONZALES, Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

_____

**BEFORE: GUY, BATCHELDER, and GILMAN, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Petitioner Majid Zeito petitions this court to review the order of the Board of Immigration Appeals ("BIA") that affirmed the order of the Immigration Judge ("IJ") denying his petitions for asylum, withholding of removal, humanitarian asylum, and relief under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Because we find that Zeito did not preserve his CAT request for our review and the IJ's credibility determinations on the asylum and withholding of removal requests are supported by substantial evidence, we DENY the petition for review.

**I.**

Zeito, a Chaldean Catholic of the Assyrian ethnic group and an Iraqi citizen, fled that country in July 1999 after his father was murdered by Ba'ath party officials. In the two applications he

completed as part of his application for asylum, he related that he was "reproached and abused" in Iraq because of his religion, was not allowed to play with Muslim children, and performed poorly in school because much of the curriculum centered around familiarity with Islam. Zeito's father was a member of the Assyrian party, an outlawed political party forced into the underground by Saddam Hussein's Ba'athist regime, and served in the Iraqi army during the Iran-Iraq and Iraq-Kuwait wars. Zeito and his brother may have helped their father in his activities on a few occasions. As a result of his political affiliations and religion, Zeito's father was "constantly abused" and was detained on a few occasions. Eventually, Zeito's father was arrested on charges of treason, tortured, and killed by the Ba'ath party for not donating money to the party when it was demanded. Party officials then brought Zeito's father's "badly mutilated" body to Zeito's home, told the family not to mourn, and demanded money for the bullets used to kill him. Zeito stated that he was beaten by the officials on this day.

Zeito's mother then removed herself, Zeito, Zeito's brother, and Zeito's brother's spouse to Turkey, and Zeito continued on to Greece, France, and Mexico before entering the United States in 2001. Upon Zeito's entry into the United States, an INS officer conducted a "credible fear" interview to determine his eligibility for asylum. Zeito related his story, and the INS officer conducting the interview found that there was "a significant possibility that the assertions underlying the applicant's claim could be found credible in a full asylum or withholding of removal hearing."

The former Immigration and Naturalization Service ("INS") commenced removal proceedings against Zeito on November 15, 2001, and served him with a Notice to Appear in immigration court, seeking removal on the ground that he did not have valid entry documents as required by 8 U.S.C. 1182(a)(7)(A)(i)(I). Zeito admitted the charge, but petitioned the immigration

2

court to remain in the United States under a grant of asylum, a withholding of removal, or as part of the United States' treaty obligations under the CAT.

At the evidentiary hearing before the IJ, Zeito testified to many of the same things that he had mentioned in his previous two affidavits, but he added some details not contained in those accounts and needed to clarify his testimony on several points. When asked about his father's experiences in the military, he stated that his father had been detained twice—once for a period of ten days and later for a period of four days. He had earlier stated that his father had been detained once for five weeks, but that detention was outside of his military service. Zeito also added more detail to the description of the day the Iraqi officials brought his father's body to the family, claiming that the officials struck and broke Zeito's mother's hand when she attacked an officer. Earlier, however, Zeito had stated that no other member of his family was injured on that day. He stated later in the same hearing that he was never beaten by the officials that brought his father's body to the home.

Zeito also called his cousin, Madlen Zeito, to testify on his behalf. Ms. Zeito stated that Zeito was beaten both by the government and by other children and that Zeito's father was frequently beaten by the government because of his opposition to the Ba'ath party. Ms. Zeito did not claim to have any personal knowledge of Zeito's father's political activities, but stated that she had heard that Zeito's father had been a member of the Assyrian party. Later in the same hearing, she stated that Zeito's father was not a member of that party. She also related that she and Zeito were not neighbors when they lived in Iraq, but later, when asked to explain evidence showing that they lived at similar addresses on the same street during the same time period, she said that she was not sure about that fact. Finally, Ms. Zeito gave three different accounts as to how she learned of

3

Zeito's father's arrest: by hearing about it, by actually witnessing it, and by hearing the commotion of the arrest and finding out the next day what had happened.

After the hearing, the IJ denied Zeito's claims for relief. Zeito appealed the IJ's order to the BIA, which reversed the IJ's determination that the asylum claim was frivolous but affirmed the order in all other respects. Zeito now petitions this court to review the order of the Board pursuant to 8 U.S.C. § 1252 (a)(1), arguing that the IJ's findings that the testimony of Zeito and his witness was not credible and that he is not entitled to asylum are not supported by substantial evidence; that the Board improperly evaluated his claim for withholding of removal; and that he should have been entitled to relief under the CAT because the IJ and BIA improperly considered the credibility of testimony in determining whether he was entitled to CAT relief.

## II.

On appeal of the IJ's denial of the petitioner's application for asylum and withholding of removal pursuant to Sections 208(a) and 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(a) and 1231(b)(3), the BIA affirmed the IJ's decision for the reasons stated therein, but reversed the IJ's determination that the claims were frivolous. When the BIA adopts the decision of the IJ instead of issuing its own opinion, we review the IJ's decision as if it were the agency's final order. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). Our review is confined to the administrative record on which the order of removal was based, and "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(A) and (B). Moreover, a discretionary decision to deny asylum under 8 U.S.C. § 1158 "shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

4

The INA prescribes a substantial evidence standard of review. *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004). This standard requires us to uphold the BIA's decision if the record as a whole, and not simply the evidence in the record supporting the agency's decision, contains reasonable, substantial, and probative evidence sufficient to support the decision. *Id.* at 638. We may not reverse simply because we would have decided the case differently; we may reverse the board's factual determinations only if the evidence compels a conclusion contrary to the one the board reached. *Id.*; *Adhiyappa v. I.N.S.*, 58 F.3d 261, 265 (6th Cir. 1995); *Klawitter v. I.N.S.*, 970 F.2d 149, 152 (6th Cir. 1992).

A reviewing court must subject the IJ's credibility determinations to "meaningful judicial review." *Nwakanma v. Gonzales*, 126 Fed. Appx. 699, 700, # 03-4317 (6th Cir. March 25, 2005) (unpublished) (reversing an IJ's credibility findings). A credibility finding adverse to a petitioner "must be based on issues that go to the heart of the applicant's claim," and any discrepancies cannot have a bearing on credibility unless they can "be viewed as attempts by the applicant to enhance his claims of persecution." *Daneshvar v. Ashcroft*, 355 F.3d 615, 619 n.2, 623 (6th Cir. 2004).

The INA grants the Attorney General the discretionary power to grant asylum to any alien who qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42). 8 U.S.C. § 1158(b)(1). A "refugee" is defined as any person who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). It is the alien who bears the burden of proving past persecution or a well-founded fear of future persecution, 8 C.F.R. § 208.13(a) & 8 C.F.R. § 208.16(b), but a petitioner who demonstrates past persecution is entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. §

5

208.13(b)(1). If this presumption is established, the government may rebut it by showing by a preponderance of the evidence that there has been a fundamental change in circumstances that would remove that well-founded fear. 8 C.F.R. § 1208.13(b)(1)(i)(A); *Mullai*, 385 F.3d at 638; *Ouda v. I.N.S.*, 324 F.3d 445, 452 (6th Cir. 2003).

The IJ in this case determined that "[t]he respondent's testimony and his application are inconsistent" and that the inconsistencies were material because they went to the heart of his claim for asylum, explaining that "respondent's testimony omits events and details of his claims of persecution set forth in the application" and that "respondent has failed to provide a convincing explanation for these discrepancies and omissions." She noted several differences between his testimony and applications, which she deemed inconsistent, including the accounts of how involved his father was in the Assyrian party, his brother's involvement in his father's affairs, and whether or not Zeito himself was beaten and threatened by Iraqi officials. However, very few of these were actually inconsistent and were in fact differences in the amount of information given at the various stages of Zeito's asylum application process.

The Government argues on appeal inconsistencies in Zeito's story that the IJ did not mention in her opinion. We think, however, that these alleged inconsistencies are more likely misinterpretations of Zeito's testimony at the hearing before the IJ or instances in which Zeito simply provided more information at the hearing than he had provided in his asylum applications.

The IJ also found Zeito's witness to be not at all credible, and concluded by stating that "[t]he respondent has offered only his word as his evidence, and his word is not credible. He has offered no explanation for his failure to provide corroborative, objective evidence of these claims."

6

She further provided that Zeito's testimony was not sufficiently detailed, consistent, and believable to stand by itself in support of his claim.

In *Nwakanma*, we reversed an IJ's credibility findings for two reasons: (1) many of the perceived inconsistencies were not actually inconsistencies, but rather were instances in which certain information was presented in some stages of the proceeding but not in others, or the IJ was simply mistaken that there were differences in the information presented; and (2) where there were actually inconsistencies, those inconsistencies did not go to the heart of the claim, because they did not seem to be an attempt to embellish the petitioner's experiences in order to increase his chances of being granted asylum. *Nwakanma*, 126 Fed. Appx. at 701-702.

The IJ's credibility determinations in this case suffer from the same deficiencies, though they are not as blatant as those found in *Nwakanma*. Several of her findings of inconsistency are not actually inconsistencies at all, but rather are failures to provide the same amount of detail at different stages of the proceeding. Nonetheless, the IJ's credibility determinations must be upheld here for several reasons.

First, the inconsistency relating to whether Zeito was ever beaten by Iraqi officials does go to the heart of the matter, because it relates to whether he actually suffered any persecution personally rather than vicariously through his father's persecution. His accounts with regard to this matter were actually inconsistent; they did not simply fail to provide the same information at different times. Second, although the evidence Zeito offered to show his own personal persecution due to his religious beliefs was never brought into question, there is enough of a question as to his father's level of activity in the Assyrian party (which would increase Zeito's chances of persecution) and as to Zeito's own interaction with Iraqi officials for the IJ to question whether Zeito was

7

embellishing his story in order to increase his chances of being granted asylum. Third, the IJ seemed to place great weight on the questionable credibility of Zeito's witness, who did actually contradict herself in her testimony at the hearing in several particulars.

Finally, we have examined the initial application and corresponding affidavit, prepared while Zeito was in Mexico, and the second application and corresponding affidavit, prepared after he entered the United States. The initial statement described mostly religious persecution, but the second added political persecution and his own interaction with Iraqi officials. We think that the IJ reasonably could have concluded that the details added to the second application were calculated to increase Zeito's chances of being granted asylum, particularly in light of the fact that even more detail was produced by Zeito at the hearing. Although the IJ's conclusion—based on her credibility determinations—that the asylum claims were frivolous was reversed by the BIA, the IJ's determination that his testimony was "so incredible [and] so contradictory as to be false" demonstrates the strength of her belief was that Zeito was not credible.

We are required to award a high degree of deference to the credibility determinations the IJ makes. *See Mullai*, 385 F.3d at 638. Simply saying that we would have found the witness to be credible is not sufficient; rather, we must be able to say that the IJ could not have found that the witness was not credible. *See id.* Because we cannot make the latter finding, we must affirm the BIA's decision denying asylum.

## III.

An alien who qualifies as a refugee based on past persecution, but who cannot establish a well-founded fear of persecution because of changed country conditions, may still qualify for a discretionary grant of asylum. 8 C.F.R. § 208.13(b)(1)(iii). This so-called "humanitarian" grant of

8

asylum was first developed by the BIA in *Matter of Chen*, 20 I. & N. Dec. 16 (BIA 1989). In order to qualify for this discretionary grant of asylum, the alien must either demonstrate "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution" or "establish[] that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 208.13(b)(1)(iii)(A) and (B). We review for abuse of discretion the IJ's discretionary decision whether or not to grant relief pursuant to 8 C.F.R. § 208.13(b)(1)(iii). *See Ngarurih v. Ashcroft*, 371 F.3d 182, 191 (4th Cir. 2004).

The IJ's discretionary decision to deny Zeito humanitarian asylum was based on the same credibility determination that doomed his 8 U.S.C. § 1158(b)(1) asylum petition, and on the additional finding that Zeito sought asylum in the United States (rather than in Greece, France, or Mexico) primarily for economic reasons. Because the standard of review mandates deference to the IJ's credibility decision and the evidence of Zeito's motives in coming to the United States is clear from the record, we must also affirm this determination.

**IV.**

While a grant of asylum is discretionary, withholding of removal pursuant to Section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3)(A), is mandatory if the applicant can demonstrate that there is a "clear probability" that he would be subject to persecution on account of one of the same five protected bases for establishing asylum. *I.N.S. v. Stevic*, 467 U.S. 407, 430 (1984); *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 545 (6th Cir. 2003). But an applicant seeking withholding of removal faces a more stringent burden of proof than one seeking asylum. *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004).

Zeito's claimed error with the IJ's decision as to his petition for withholding of removal rested on the same credibility grounds as the asylum claim and involves a more stringent proof requirement. Because the record and the law supports the IJ's and BIA's determination that the petitioner is not eligible for asylum, he necessarily cannot satisfy the more stringent standard for withholding of removal. *Daneshvar*, 355 F.3d at 625.

## V.

Department of Homeland Security regulations also provide for judicial review of a BIA denial of relief under the CAT. *See* 8 C.F.R. § 208.18(e). However, this court may address only those claims that have been exhausted administratively. *See* 8 U.S.C. § 1252(a)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004); *Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994); *Dokic v. I.N.S.*, 899 F.2d 530, 532 (6th Cir. 1990). A petitioner fails to exhaust his administrative remedies when he fails to make arguments to the BIA regarding the proceedings before the IJ or attacks the opinion the IJ rendered. *See Ramani*, 378 F.3d at 559.

Zeito did not argue to the BIA that the IJ's denial of his CAT petition was erroneous. The only mention of the CAT claim in his brief to the BIA was a recitation of the standards for torture. Zeito made no argument as to the requirements for making out a CAT claim, nor did he ever argue that the IJ incorrectly relied on her credibility determination in denying his CAT claim—the argument he is making in this court. We therefore lack jurisdiction to review the denial of relief under the CAT.

## VI.

Zeito's final argument is that changed country conditions in Iraq since the proceedings before the IJ mandate that this court vacate the BIA's decision and remand the matter to the BIA for further

10

proceedings. The government counters that because of the overthrow of the Ba'athist regime, conditions have changed in Zeito's favor and Zeito's request for remand should be denied.

In *Visha v. I.N.S.*, 51 Fed. Appx. 547, #003446 (6th Cir. Nov. 13, 2002) (unpublished), the petitioner asked this court either to remand his case to the BIA for consideration of additional evidence of changed country conditions or to take judicial notice of such changed country conditions and consider the issue itself. *Id.* at 551. We noted that with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress abrogated the ability of an appeals court to remand a case to the BIA for consideration of additional evidence, or to take judicial notice of such evidence of change, and limited the appeals court's review to the administrative record. *Id. See also* 8 U.S.C. § 1252(b)(4)(A).

Zeito, though not making any real argument as to the mechanism by which this court should either remand or consider the evidence for the first time on appeal, appears to be making the same argument made by the petitioner in *Vishna*. Zeito's proper recourse, however, is to petition the BIA to reopen his case under 8 C.F.R. § 1003.2(c). That section provides that the BIA may reopen a closed proceeding if the petitioner includes with the petition affidavits and the information to be considered at the reopened proceeding relating to the change in conditions since the BIA originally considered the claim. *See* 8 C.F.R. § 1003.2(c)(1). Additionally, the time limitations set forth in the section do not apply to petitions to reopen due to changed country conditions. *See* 8 C.F.R. § 1003.2(c)(3)(ii). This process therefore provides Zeito an adequate opportunity to present this evidence to the BIA.

## VII.

For the foregoing reasons, we **DENY** Zeito's petition for review.

11