NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0050n.06
Filed: January 19, 2005

No. 03-3523

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AWAN FAWZI JEBRAAIL, | ) | |
| | ) | |
| Petitioner, | ) | **ON PETITION FOR REVIEW OF AN** |
| | ) | **ORDER OF THE BOARD OF** |
| v. | ) | **IMMIGRATION APPEALS** |
| | ) | |
| JOHN ASHCROFT, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: GIBBONS and ROGERS, Circuit Judges; BUNNING, District Judge.[*]

**ROGERS, Circuit Judge.** Awan Fawzi Jebraail petitions for review of a final order of removal issued by the Board of Immigration Appeals ("the Board"). Pursuant to its affirmance without opinion procedure, the Board affirmed the Immigration Judge's ("IJ") denial of Jebraail's application for asylum and for withholding of removal under both the Immigration and Nationality Act and the Convention Against Torture. Because the IJ's adverse credibility determination, which resulted in a finding that Jebraail did not suffer persecution, was supported by substantial evidence in the record, we deny Jebraail's petition for review.

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Jebraail, a citizen of Iraq, lawfully entered the United States in March of 2000 under a non-immigrant fiancé visa. After overstaying his visa, Jebraail filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. Jebraail based his asylum application on imputed and actual political opinion and religion.[1] Jebraail is an Assyrian Christian. He alleged in his application that he was perceived as an opponent of dictator Saddam Hussein because of his association with General Yaseen Ali, a high-ranking Iraqi official and member of the ruling Ba'ath Party who was subsequently arrested and accused of opposing the Hussein regime. Further, Jebraail alleged that he actually did hold dissident political opinions. Jebraail was the only witness to testify at his asylum hearing, and his testimony formed the chief evidence supporting his application.[2] An IJ issued a decision denying Jebraail's requests for relief and ordering him removed to Iraq.

Jebraail's asylum application and testimony at his hearing describe the facts of his claim as follows. Jebraail was conscripted into the Iraqi army in 1990 and was trained in the use of electronic surveillance equipment. While in the Iraqi military, Jebraail was forced to sign a document stating that he would not oppose the Ba'ath Party or join another political party on penalty of death.

---

[1]Although Jebraail alleged religion as a ground for asylum in his application, his written account and his testimony both identified Jebraail's alliance with General Yaseen Ali as the chief basis for his claim.

[2]Jebraail also submitted country reports and news articles detailing Saddam Hussein's repressive regime, affidavits from Jebraail's brother and sister corroborating that Jebraail was arrested in Iraq, and a translation of Jebraail's military certificate.

Jebraail was periodically recalled to service in the Iraqi army between his discharge in 1992 and his flight from Iraq in 1999.

After serving his term in the Iraqi army, Jebraail trained to become a glass-maker in the northern Mosul region. Jebraail opened a small glass shop and began doing business with a Kurdish man. With the help of his associate and General Yaseen Ali, Jebraail was able to do business selling glass in the northern no-fly zone. At his asylum hearing, Jebraail identified General Ali as Iraq's Assistant Director for General Security. Jebraail bribed General Ali to allow Jebraail to make business trips to the no-fly zone. When he left and returned from the no-fly zone, Jebraail was detained by Iraqi security forces, who questioned Jebraail regarding the purpose of his trips.

Jebraail's sister was a medical doctor and as such was forbidden to leave Iraq. In 1996, Jebraail's father escorted Jebraail's sister to Jordan after obtaining false papers that concealed her occupation. From there, Jebraail's sister fled to the United States and married a U.S. citizen. Jebraail's father was imprisoned when he returned to Iraq after helping Jebraail's sister flee. Jebraail paid Iraqi officials a bribe to secure his father's release.

In 1999, General Ali, Jebraail's Ba'athist contact, was arrested by Iraqi security forces and accused of opposing Hussein's regime. Following the arrest of General Ali, Jebraail was arrested and held in an Iraqi prison for forty-five days, from July 29, 1999, through September 11, 1999. Iraqi security forces questioned him regarding his connection to General Ali, his trips to the northern no-fly zone, and his perceived opposition to Hussein's regime. Jebraail alleges he was beaten

repeatedly during the interrogation, leaving a visible scar on his forehead. Jebraail was released from prison after his Kurdish business partner paid a large bribe. Shortly after his release, Jebraail sold his glass business to this partner and left Iraq for Jordan, where he remained for six months before departing for the United States.

On February 22, 2001, the IJ issued a decision denying all of Jebraail's requests for relief, and ordering him removed to Iraq. The IJ determined that Jebraail was ineligible for asylum; further, he was not entitled to withholding of removal under the Act or the Convention Against Torture. The IJ found that Jebraail was not credible, because his testimony and asylum application gave divergent descriptions of events central to his claim of persecution. Jebraail appealed the IJ's decision to the BIA. As provided by 8 C.F.R. § 1003.1, the BIA affirmed the IJ's decision without opinion on March 27, 2003. Jebraail then filed this petition for review.

To establish eligibility for asylum, an applicant must prove he is a "refugee," i.e., a person unable or unwilling to return to his country of origin because of a well-founded fear of persecution based on race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A) (2001); 8 C.F.R. § 208.13(a) (2004). To be well-founded, the fear of persecution must be subjectively genuine and objectively reasonable. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). If credible, the testimony of the applicant is sufficient to establish his status as a refugee without corroboration. *Id.* (citing 8 C.F.R. § 208.13(a)). Proof of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). If an applicant establishes that he is a refugee, he is eligible for a

discretionary grant of asylum. 8 U.S.C. § 1158(b)(1) (2001); 8 C.F.R. § 208.14(a). To earn withholding of removal under the Act, an applicant must demonstrate that there is a clear probability that he would be subject to persecution on account of the reasons enumerated above. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430-31 (1987); *Mikhailevitch*, 146 F.3d at 391. To establish eligibility for withholding of removal under the Convention Against Torture, an applicant must demonstrate that it is more likely than not he will be tortured if returned to his country of origin. *See* 8 C.F.R. § 208.18(a) (definition of torture); *id.* § 208.16(c)(2) (burden of proof for relief under Convention Against Torture).

Because the BIA affirmed without an opinion, this court directly reviews the decision of the IJ. *Denko v. INS,* 351 F.3d 717, 730 (6th Cir. 2003). Jebraail must demonstrate that the IJ's adverse credibility determination was not supported by substantial evidence in order to persuade this court to grant the petition for review. *See Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004). The reversal of an adverse credibility determination is warranted only where "any reasonable adjudicator would be compelled to conclude to the contrary." *See* 8 U.S.C. § 1252(b)(4)(B); *Yu*, 364 F.3d at 703. The IJ based her determination on inconsistency between Jebraail's asylum application and his testimony regarding two aspects of the persecution he alleged. First, the IJ found discrepancies concerning the mistreatment Jebraail suffered when he was routinely detained while entering and leaving the no-fly zone as part of his business. Jebraail testified that during these crossings he was detained only once, for two hours; his written asylum application, on the other hand, stated he was often held overnight and that the guards hit him each time he was interrogated or detained. Second,

the IJ noted discrepancies between Jebraail's asylum application and testimony concerning the details of physical abuse Jebraail suffered during his forty-five-day imprisonment in the summer of 1999. Jebraail testified he was tied to a fan and beaten with cables; his application stated that he was beaten with batons and hung from a hook while blindfolded. When an applicant alleges grave mistreatment in his asylum application, but his subsequent hearing testimony does not "measure up" to the account in the application, the IJ is entitled to conclude that the discrepancy casts "grave doubt upon the applicant's overall credibility." *Pilica v. Ashcroft,* 388 F.3d 941, 953–54 (6th Cir. 2004) (citing *Octaviano De Leon-Barrios v. INS,* 116 F.3d 391, 393–94 (9th Cir. 1997)). Here, Jebraail's asylum application and testimony arguably were consistent concerning his core claim that Iraqi police imprisoned him for forty-five days in retaliation for his association with General Ali. Nonetheless, given inconsistencies regarding previous episodes of mistreatment,[3] one cannot say that any reasonable adjudicator would be compelled to find Jebraail credible.

The IJ found that Jebraail's failure to provide corroboration damaged the credibility of his claims. Jebraail argues that the IJ erred by strictly requiring corroboration. While corroboration is not essential to establishing an objective basis for the applicant's well-founded fear of persecution, the IJ may look to corroboration to sustain the applicant's burden of proof when the applicant's

---

[3]The weight the IJ attached to Jebraail's inconsistent statements regarding the implements with which he was beaten, on the other hand, strains the bounds of reasonableness. This is particularly the case since Jebraail testified at his hearing that much of the abuse occurred while he was blindfolded. Nonetheless, given the highly deferential standard of review and the presence of other, more damaging, inconsistencies, this failing does not require reversal of the adverse credibility determination.

testimony lacks credibility. *See Nigussie v. Ashcroft*, 383 F.3d 531, 537-38 (7th Cir. 2004). The IJ noted that Jebraail's brother and sister were unable to confirm any factual details of Jebraail's account. The IJ may have held unrealistic expectations of corroboration concerning some factual aspects of the case: for example, Jebraail's brother and sister both left Iraq before Jebraail's 1999 imprisonment and therefore would have no direct knowledge of the circumstances that led to it. Nonetheless, it is reasonable to expect that these close relatives might confirm other details, such as Jebraail's association with General Ali, which predated Jebraail's sister's departure. Instead, they merely submitted spare affidavits that referred to Jebraail's imprisonment in Iraq.

The IJ also requested that Jebraail come forward with corroborating evidence concerning General Ali, and questioned whether General Ali in fact existed, since State Department country reports noted the names of other military officers arrested or executed by the government for disloyalty, but did not mention General Ali. As permitted by regulation, the Immigration Court inquired of the State Department regarding General Ali; the State Department had no record of his existence. The IJ was reasonable to question why Jebraail could not document the existence of a purportedly high-ranking Ba'athist general. Substantial evidence supported the IJ's adverse credibility determination; therefore, the IJ's denial of asylum and withholding of removal was proper. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir.2004) (noting that, because withholding of removal claims under the Act and under the Convention Against Torture require a higher burden of proof than that imposed on asylum-seekers, a finding that an applicant failed to

establish eligibility for asylum frequently means that he is not entitled to either form of withholding of removal on the same facts).

Jebraail further argues that the IJ incorrectly found him to be firmly resettled in Jordan. If an asylum applicant has been firmly resettled outside his home country before arriving in the United States, asylum is mandatorily barred. 8 C.F.R. § 208.13(c)(2)(i)(B). This argument is irrelevant, because the IJ did not determine Jebraail to be barred from asylum eligibility based on firm resettlement; instead, her determination that Jebraail was ineligible for asylum was based chiefly on her conclusion that Jebraail was not credible enough to prove past persecution or a well-founded fear of future persecution.

Finally, Jebraail argues that this court should remand his case to the Board for consideration of changed country conditions. Jebraail argues that conditions in Iraq have deteriorated for Iraqi Christians, who face the threat of attack by Islamic zealots. This argument must fail. This court cannot supplement the administrative record, and the Board did not take administrative notice of the likelihood that Hussein would be toppled when it affirmed without opinion the IJ's order of removal in March 2003.[4] *See* 8 U.S.C. § 1252(a)(1) (providing that reviewing court may not take additional evidence); *id.* § 1252(b)(4)(A) (limiting judicial review to administrative record on which removal

---

[4]Were this court to take notice of changed country conditions, the toppling of the Saddam Hussein regime would further undermine the claims reviewed here, which are based chiefly on Jebraail's opposition to the Hussein regime. *See* 8 C.F.R. § 208.13(b)(1)(i)(A) (providing that, where the applicant proves past persecution but the Service demonstrates that, due to a fundamental change in circumstances, the applicant no longer has a well-founded fear, the applicant is ineligible for asylum).

order is based). This court, in a well-reasoned but unpublished opinion, has found further that it cannot take judicial notice of changed country conditions. *Visha v. INS,* No. 00-3446, 2002 WL 31553921, at *3 (6th Cir. Nov. 13, 2002).

For the foregoing reasons, we deny the petition for review.