NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0108n.06
Filed: February 10, 2006

No. 04-4182

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SAMIR YONAN KHORA, JINA HANNO ESHOU, LOWNA SAMIR KHORA, LEON SAMIR KHORA, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | ON PETITION FROM THE BOARD OF IMMIGRATION APPEALS |
| ALBERTO R. GONZALES, ATTORNEY GENERAL, | ) ) ) | |
| Respondent. | ) ) | |

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge; and ROSE, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Petitioners, four members of an Iraqi Chaldean Christian family, appeal the decision of the Board of Immigration Appeals ("BIA") to deny them asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). The BIA denied petitioners' applications based on a finding that, following the collapse of the government of Saddam Hussein, conditions in Iraq had fundamentally changed such that petitioners

_____

[*] The Honorable Thomas M. Rose, United States District Court for the Southern District of Ohio, sitting by designation.

1

no longer had a well-founded fear of persecution. For the following reasons, we deny the petition for review.

## I.

Samir Yonan Khora ("Khora") is an Iraqi citizen of Chaldean ethnicity who practices the Roman Catholic religion.[1] Because Khora is a Chaldean Christian, he experienced considerable problems living in Iraq under the Hussein government. Early in Khora's life, Muslim school teachers and students teased and humiliated Khora. Forced to study the Koran and attend Muslim classes, Khora finally quit school and went to live at a monastery where he studied to be a priest. Khora was eventually called for military duty and served from 1978 until 1988. In August of 1990, Khora was again called up to duty, this time serving until July 1991. Khora's military service was longer than average because he is a Christian and not a member of the Ba'ath Party. While in the military, Khora was pressured to join the Ba'ath Party. In July 1982, military intelligence threatened Khora after his commanding officer alleged that Khora was preaching Christianity to other soldiers. At that time, military intelligence officers spit on him, cursed at him, and pushed and slapped him.

Following his release from the military in 1991, Khora worked at a Baghdad hotel. On March 20, 1994, a security patrol came to the hotel looking for Kurds. Upon arrival, however, the security patrol found a Christian group conducting a meeting. The Christian group, of which Khora was a member, acted as a liaison, funneling aid and support between Christians in other countries and Iraqi Christians. The security forces detained the meeting's participants. The security forces

---

[1] Samir Khora is the husband of Jinna Hanno Eshou and the father of Lowna Samir Khora and Leon Samir Khora. The asylum and withholding applications of his wife and children are derivative of his. For that reason, this opinion refers to all petitioners by reference to Samir Khora.

2

took Khora to their headquarters and accused him of working with an anti-government group. They interrogated, beat, and tortured Khora for almost one month. On April 15, 1994, after the security forces found no credible evidence against Khora, he was released. Khora remembers that he was required to sign an affidavit before the security forces would release him.

After his release, Khora returned to work at the same Baghdad hotel. On August 9, 1994, Khora received information that the security forces were again looking for him and that they wanted to arrest him. Khora remembered that the affidavit he signed stated that he would not be released if he was arrested a second time. Khora fled immediately to Mosul. He left Iraq on August 18, 1994, traveling first to Turkey, where he stayed for two weeks, and then to Greece.

Khora came to the United States in 2000, after spending six years working in Greece. Khora had planned to come to the United States since he left Iraq because he has family in the United States. He did not apply for asylum in Greece. Khora arrived in the United States and sought admission on September 23, 2000, but he was not in possession of valid entry documents. On September 26, 2000, the Immigration and Naturalization Service ("INS")[2] issued Khora a notice to appear, charging him with removability as an alien who at the time of application for admission to the United States was not in possession of valid entry documents pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). At the removal hearing, Khora conceded removability but applied for asylum, withholding of removal, and CAT protection. Khora testified that he feared returning to Iraq

---

[2] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135. This legislation created the Department of Homeland Security ("DHS"), abolished the INS, and transferred the functions of the INS to the DHS. This opinion refers to INS and DHS interchangeably.

3

because of religious persecution. On cross-examination, Khora acknowledged that his previous troubles had been with the Hussein government, which is no longer in power, and that his present fear of return was based on the general country conditions and civil strife currently in Iraq.

On June 26, 2003, an immigration judge denied Khora's application for asylum, withholding of removal, and CAT protection. The immigration judge decided that Khora presented credible testimony, which was corroborated by his wife and two other witnesses. The immigration judge found, nevertheless, that Khora had not suffered past persecution and that, even if Khora had suffered past persecution, there had been a fundamental change in circumstances in Iraq such that his fear was no longer well-founded. With regard to Khora's CAT claim, the immigration judge found that the people by whom Khora fears being tortured are not public officials or other persons acting in an official capacity. The immigration judge thus denied the applications for asylum, withholding of removal, and protection under the CAT, and ordered Khora removed to Iraq.

Khora appealed the immigration judge's decision to the BIA. On September 8, 2004, the BIA affirmed the decision of the immigration judge and dismissed the appeal. While the BIA disagreed with the immigration judge's finding that Khora had not suffered past persecution, it found that the evidence in the record of changed circumstances in Iraq sufficiently rebutted the presumption that Khora had a well-founded fear of persecution. Additionally, the BIA rejected Khora's argument that he feared future persecution by "bands of fundamentalist Muslims who seek to establish a new Islamic government." Khora timely filed a petition for review.

II.

4

We will uphold the BIA's decision if it was supported by substantial evidence. *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004); *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). Under the substantial evidence standard, we uphold the immigration judge's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). The "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

In this case, the BIA expressly adopted and affirmed the immigration judge's decision. The immigration judge's decision therefore serves as the relevant focus of our review except where the BIA added to that decision. *See Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).

## A.

The Attorney General may grant asylum to an applicant who is a "refugee" within the meaning of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1158(b)(1). The INA defines "refugee" as a person who is unable or unwilling to return to his or her country of nationality because of a well-founded fear of persecution based on one of the following qualifying grounds: race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). An applicant can establish that he qualifies as a refugee either by showing that he has suffered past persecution or that he has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b).

If an applicant establishes past persecution on account of one of the qualifying grounds, the applicant is presumed to have a well-founded fear of persecution on that same ground. 8 C.F.R.

§ 1208.13(b)(1). This presumption is rebutted, however, if the immigration judge finds that there "has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(1)(i)(A). "The INS must do more than show that circumstances in the country have fundamentally changed; the INS must also show that such change negates the particular applicant's well-founded fear of persecution." *Ouda v. INS*, 324 F.3d 445, 452 (6th Cir. 2003).

To establish a well-founded fear of persecution without relying on past persecution, an applicant must establish that: (1) he has a fear of persecution on one of the qualifying grounds; (2) there is a reasonable possibility of suffering persecution upon return; and (3) he is unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear. 8 C.F.R. § 1208.13(b)(2). A well-founded fear must be both subjectively genuine and objectively reasonable. *Abay v. Ashcroft*, 368 F.3d 634, 637 (6th Cir. 2004).

We turn first to the question of whether Khora was eligible for asylum based on evidence of past persecution. The BIA determined, contrary to the findings of the immigration judge, that Khora demonstrated that he had suffered past persecution in Iraq. Khora was therefore entitled to the regulatory presumption that he has a well-founded fear of persecution. The BIA decided, this time in agreement with the immigration judge, that the regulatory presumption that Khora has a well-founded fear of persecution was rebutted by a fundamental change in circumstances in Iraq such that Khora no longer has a well-founded fear of persecution.

Substantial evidence in the record supports the BIA's decision that a fundamental change in circumstances rebutted the presumption that Khora has a well-founded fear based on past

6

persecution. The government provided newspaper articles and State Department press releases and reports from April and May of 2003. The evidence submitted by the government outlines, in general terms, the goals of representative government, religious tolerance, and the return of the rule of law in the future Iraq. The evidence submitted by DHS establishes the complete overhaul of the Iraqi government. Indeed, Khora stated during his removal proceedings that the Iraqi government with which he had trouble no longer exists. Given that Khora's past persecution was at the hands of the security forces of the Hussein government, the immigration judge's conclusion that the change of power negated Khora's presumed fear based on past persecution was not unreasonable.

An alien who proves past persecution, but who cannot establish a well-founded fear of persecution because of changed country conditions, may still qualify for a discretionary, "humanitarian" grant of asylum. 8 C.F.R. § 208.13(b)(1)(iii). Because Khora established past persecution, he could still have qualified for asylum if he demonstrated either compelling reasons for being unwilling or unable to return to Iraq arising out of the severity of his past persecution, 8 C.F.R § 1208.13(b)(1)(iii)(A), or a reasonable possibility of serious harm upon removal to Iraq, 8 C.F.R. § 1208.13(b)(1)(iii)(B). The immigration judge found that Khora met neither condition. Because these regulations leave the relief to the adjudicator's discretion, we review these decisions only for an abuse of discretion. *See* 8 C.F.R. § 1208.13(b)(1)(iii); *Hadad v. Ashcroft*, 127 F. App'x 800, 803 (6th Cir. 2005). Because Khora presented no medical or other testimony tending to establish that he suffers from particular problems as a result of his past persecution, we find that the immigration judge did not abuse his discretion by concluding that Khora's past persecution was not sufficiently severe to warrant a humanitarian grant of asylum. *See Hadad*, 127 F. App'x at 803-04.

7

We also hold that it was not an abuse of discretion for the immigration judge to conclude that Khora had not demonstrated a reasonable possibility of serious harm upon removal to Iraq. The evidence that Khora entered into the record points to a general fear, during the spring of 2003, in the Iraqi Christian community concerning the emergence of Islamist political factions. Although a few of the articles do note harassment of Christians in Iraq by Muslim citizens, these reports fall short of establishing a reasonable probability of serious harm to Chaldean Christians in Iraq following the removal of the Hussein government.

Although Khora was not eligible for asylum based on past persecution, he also had the opportunity to show that he had a well-founded fear of future persecution. In order to do so, Khora was required to show either that there is a reasonable possibility that he would be singled out individually for persecution upon return to Iraq, or that he was a member of a group that is subject to a pattern or practice of persecution in Iraq. 8 C.F.R. § 1208.13(b)(2)(iii). We do not believe that Khora carried his burden of showing a well-founded fear of future persecution. As we noted with respect to the humanitarian relief sought, the evidence in the record of a generalized anxiety among Iraqi Christians in the spring of 2003 does not compel a finding either that there was a reasonable possibility that Khora would be singled out for persecution or that Khora was a member of a group subject to a pattern or practice of persecution.

Khora attacks each of these rulings by claiming that the conditions in Iraq for Chaldean Christians have only worsened since the fall of the Hussein government. Specifically, Khora argues that he will be persecuted or seriously harmed in Iraq by insurgents, terrorists, fundamentalists, or Ba'ath Party loyalists as a result of either his Christianity or his perceived cooperation with the

8

American presence in Iraq. Khora's petition to this court attempts to augment the evidence in the record by reference to more recent newspaper articles that detail the civil strife in present-day Iraq and the plight of Iraqi Christians as manifested in recent church bombings.

We are thus faced with the question of how Khora should seek relief based on his belief that conditions in Iraq have worsened since the fall of Hussein regime. We briefly note that our opinions have not been entirely consistent with regard to whether we can take judicial notice of changed country conditions in Iraq following a BIA decision. *Compare Namo v. Gonzales*, 401 F.3d 453, 458 (6th Cir. 2005) ("This court may take judicial notice of changed circumstances.") (citing *Ivezaj v. INS*, 84 F.3d 215, 219 (6th Cir. 1996)), *with Jebraail v. Ashcroft*, 119 F. App'x 759, 764 (6th Cir. 2005) ("This court, in a well-reasoned but unpublished opinion, has found further that it cannot take judicial notice of changed country conditions.") (citing *Visha v. INS*, 51 F. App'x 547, 551 (6th Cir. 2002)) *and* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."). Whether we can take notice of changed conditions is not the proper inquiry however. Instead, the proper inquiry is whether we should take such notice in the first instance. We hold that, in light of the "highly complex and sensitive" nature of the question of changed country conditions, we should allow the BIA "the opportunity to address the matter in the first instance in light of its own expertise." *INS v. Orlando Ventura*, 537 U.S. 12, 17 (2002).

Khora's proper recourse is to petition the BIA to reopen his case under 8 C.F.R. § 1003.2(c)(1), which allows the BIA to "reopen a closed proceeding if the petitioner includes with the petition affidavits and the information to be considered at the reopened proceeding relating to

9

the change in conditions since the BIA originally considered the claim." *Zeito v. Gonzales*, No. 04-3397, 2005 WL 2757677, at *6 (6th Cir. October 25, 2005). The time and numerical limitations placed on motions to reopen do not apply to those based on changed country conditions. 8 C.F.R. § 1003.2(c)(3)(ii).

We therefore conclude that the evidence in the administrative record does not compel the conclusion that Khora established his eligibility for asylum. Further augmentation of that record is left to the BIA, pursuant to a motion by petitioner, in the first instance.

Khora also seeks withholding of removal. Under 8 U.S.C. § 1231(b)(3), the Attorney General may not remove an alien to a country if the alien's life or freedom would thereby be threatened. Unlike a grant of asylum, withholding of removal is mandatory if the applicant can establish a clear probability of future persecution. 8 U.S.C. § 1231(b)(3); *INS v. Stevic*, 467 U.S. 407, 413 (1984). To establish a clear probability of future persecution, the "applicant must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return." *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). Thus, "[a]n applicant seeking withholding of removal faces a more stringent burden than what is required on a claim for asylum." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). Because substantial evidence supports the BIA's determination that Khora is not eligible for asylum, it "follows that he cannot satisfy the more stringent standard for withholding of [removal]." *Mikhailevitch*, 146 F.3d at 391.

Khora also claims that he is entitled to protection under the Convention Against Torture. To be granted CAT protection, an applicant must "establish that it is more likely than not that he or she

10

would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); *see also Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005). The torture that would arise upon removal must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). The immigration judge determined that "the people [Khora] fears being tortured by could not be deemed to be a public official or other persons acting in an official capacity." The record evidence detailing the fall of the Hussein government supports this determination, and Khora has failed to offer any evidence of torture of Chaldean Christians by public officials or other persons acting in an official capacity in post-Hussein Iraq. *See Hadad*, 127 F. App'x at 804. As such, Khora is not eligible for CAT protection.

III.

For the foregoing reasons, Khora's petition for review is denied.