NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0051n.06
Filed: January 22, 2007

No. 05-4549

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PREN DUHANI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| ALBERTO GONZALES, | ) | AN ORDER OF THE BOARD OF |
| ATTORNEY GENERAL, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before: GIBBONS, MCKEAGUE, Circuit Judges; and BUNNING, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. In this immigration case petitioner Pren Duhani seeks review of a final order of removal issued by the Board of Immigration Appeals (BIA). Duhani is a native of the Kosovo region of the former Yugoslavia, Serbia and Montenegro at the time of the BIA decision. Duhani seeks asylum based on various instances of abuse and mistreatment suffered in the former Yugoslavia. Duhani's application for asylum was denied by the Immigration Judge (IJ) and by the BIA. Both denials were based on improved conditions in Duhani's native country. Because we find that conditions have improved significantly in Kosovo, and because Duhani's past

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

persecution was not so severe as to constitute a "compelling reason" for being unable to return to his native country, we deny Duhani's petition for review.

## I.

Pren Duhani is an ethnic Albanian. He was born in the town of Radulovac in the former Yugoslavia on September 5, 1961, and thereafter lived in Kosovo. Duhani's native language is Albanian; he speaks limited English and has been assisted at various proceedings by an Albanian translator. He has belonged to the Albanian Democratic Party since approximately 1978. Duhani entered the United States illegally with false documentation on September 27, 1987, and now resides in Hamtramck, Michigan. Duhani has lived continuously in the United States since 1987 and has never left. He is unmarried and has no children. Since arriving in the United States, Duhani has studied English and worked various jobs.

Duhani testified at length at his 2004 Immigration Court removal proceeding regarding the various types of mistreatment to which he was subjected in the former Yugoslavia. Duhani testified that while he was in high school, the government attempted to train him as a "young communist," although he resisted. He said that despite his outstanding academic performance, he was denied a scholarship to the University of Pristina because of his Albanian ethnicity and political activity. He ultimately enrolled at the university, though his father paid his tuition and expenses. Duhani testified that he was arrested in the summer of 1981 for participating in peaceful demonstrations as a member of the Albanian Democratic Party. The police allegedly pulled his hair and slapped him while in custody, and he was held for "about one week" before being released. He was arrested a second time and on this instance was threatened but not abused.

2

Duhani was confronted by the Serbian police a third time in 1981. He asserts that he was arrested and forced to serve in the army for approximately one year. He was sent to Slovenia and, allegedly because of his Albanian heritage, was beaten and generally mistreated during his time of service. During his service in the army, Duhani asserts that he and other Albanians were "forced to be a human shield," i.e., were forced to initially confront the opposition, so that "if anyone attacked us, they would attack the Albanians and not the Serbians." Duhani also claims he was fed insufficiently during his time in the army, was forced to carry heavy loads, and was kept in an army jail for approximately three months merely for complaining. He was beaten for asking for additional food and sustained a deep cut when a guard threw a knife at him and hit him in the hand during this beating.

After release from the army in 1982, Duhani returned to college. After repeated threats and questioning from Serbian police regarding his presence at the university, Duhani ultimately abandoned his studies. During this period, he was often threatened by Serbian police officers who also came to his house and tried to make him come to the police station for interrogation. Because he feared further beatings and interrogation and because the "intimidation continually got worse," Duhani decided to leave Kosovo permanently.

II.

Approximately five years after arriving in the United States, Duhani filed an I-589 request for asylum on July 30, 1992. In his I-589, Duhani stated: " I fear for my life and my safety should I now return to Yugoslavia under the present conditions that exists [sic]. I fear that I will jailed [sic] and tortured should I return to Yugoslavia." After several continuances, an IJ issued an oral decision

on November 24, 1999. After hearing testimony from Duhani, the IJ denied Duhani's application largely on the basis of changed circumstances in Kosovo and noted that he found no evidence that Serbs were even resident in Kosovo. The IJ accordingly denied both Duhani's asylum and withholding claims. The IJ offered Duhani the option of voluntary departure within two months after the hearing. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

Duhani filed a timely notice of appeal to the BIA. On appeal, Duhani contended that the IJ erred in denying his claim for asylum and withholding of removal and did not give Duhani a sufficient opportunity to seek relief under the Convention Against Torture (CAT). On November 27, 2002, the BIA found that Duhani was "not allowed a meaningful opportunity to present testimony or evidence in support of his claim, or to respond to/rebut the evidence introduced into the record by the Immigration and Naturalization Service." The BIA further found "[t]he respondent appears not to have been allowed to describe his own situation/factual background prompting him to leave Yugoslavia and to seek refuge in the United States, or to describe the reasons for his continued fear to return to his native Yugoslavia despite the changed country conditions there." The BIA accordingly remanded Duhani's case to the IJ in order to provide Duhani with further opportunity to provide testimony in support of his claim for asylum.

Duhani submitted a supplemental application for asylum on December 19, 2003, along with a personal statement of the mistreatment he was subjected to in the former Yugoslavia. At the merits hearing on April 23, 2004, Duhani testified extensively regarding incidents of past persecution and his continuing fear of future persecution, despite changed conditions in his native country. Duhani offered only his own testimony and presented no witnesses on his behalf. Duhani's counsel

4

submitted a then-recent *New York Times* article (dated April 18, 2004) on the conditions in Kosovo, and the Government provided the IJ with the 2003 Department of State *Country Reports on Human Rights Practice* (Country Report) section on Kosovo, which was released in February 2005.

At the conclusion of the hearing, the IJ rendered an oral decision in which he found that Duhani had not established statutory eligibility for relief and accordingly denied Duhani's claims. The IJ noted that "[w]hile the respondent's concerns in the Court's view are subjectively genuine, he has not demonstrated the objective component that a reasonable person in his situation would fear persecution on account of [his] Albanian ethnicity, especially in light of the current conditions in Kosovo." The IJ further found that Duhani had "not been able to demonstrate either through his testimony, which the Court found to be subjectively genuine, or the background material that he would be singled out for persecution because of his Albanian ethnicity under the significantly changed conditions in Kosovo at this time." Duhani's applications for political asylum and withholding of removal under the Act and the CAT were accordingly denied.

Duhani again filed a timely appeal to the BIA. On appeal, Duhani argued that the IJ erred by not deciding whether he was subject to past persecution. At the November 18, 2005, hearing the BIA found that "even assuming that the respondent had established past persecution, the preponderance of the evidence demonstrates that there has been a 'fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution.'" *See* 8 C.F.R. § 1208.13(b)(1)(i)(A), (1)(ii). Relying on the Country Report section on Serbia and Montenegro, the BIA noted that "conditions have dramatically improved in Kosovo for ethnic

Albanians since [Duhani's] departure in 1987," and that "the respondent's fear of harm from the Serbs is no longer objectively reasonable."

In the absence of a well-founded fear of persecution, asylum may still be granted if an alien can show "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution." 8 C.F.R. § 1208.13(b)(1)(iii)(A). The BIA considered this, but ultimately found Duhani's argument unconvincing: "[U]nderlying incidents in [Duhani's] case are not so severe as to constitute a compelling reason to grant asylum in the absence of a well-founded fear of persecution." The BIA found that because Duhani "failed to satisfy the lower burden of proof required for asylum, it follows that he has also failed to satisfy the higher burden of proof required for withholding of removal." Duhani's appeal was accordingly dismissed.

A timely petition for review was filed with this court.

III.

This court has jurisdiction under section 242 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(a)(1), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). This court reviews whether the BIA correctly determined that Duhani failed to sustain his burden of establishing eligibility for asylum and withholding of removal. The BIA's determination "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). The standard is a deferential one, and this court may not reverse the BIA's decision simply because it would have decided the matter differently. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). To reverse the BIA's factual determinations, this court must find that the

6

evidence "not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992).

The Attorney General has discretion under the Immigration and Nationality Act (INA) to grant asylum to a "refugee." 8 U.S.C. 1158(a). The INA defines a refugee as an alien (any non-U.S. citizen) who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant for asylum bears the burden of establishing that he qualifies as a refugee "either because he has suffered actual past persecution or because he has a well-founded fear of future persecution." 8 C.F.R. § 208.13(a)-(b); *see Mikhailevitch*, 146 F.3d at 389. An applicant who satisfies the burden of establishing past persecution is presumed to have a well-founded fear of persecution. 8 C.F.R. § 208.13(b)(1)(i). This presumption may be rebutted by the government only by establishing through a preponderance of the evidence that since the persecution occurred, conditions in the applicant's country "have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted were he to return." *Id.*; *see Ouda v. INS*, 324 F.3d 445, 452 (6th Cir. 2003).

An application for asylum in removal proceedings is automatically deemed to include a request for withholding of removal. 8 C.F.R. § 1208.3(b). Withholding removal is appropriate if the applicant establishes that "his life or freedom would be threatened in the proposed country of removal." 8 C.F.R. § 1208.16(b). More specifically, an applicant is entitled to withholding of removal if he or she demonstrates a "clear probability of persecution" through presentation of evidence establishing that it is "more likely than not that [the applicant] will be subject to

persecution" if he were to return to his native country. *INS v. Stevic*, 467 U.S. 407, 424 (1983). An applicant seeking withholding of removal must meet a more stringent burden than mere eligibility for asylum. *Mikhailevitch*, 146 F.3d at 391. Accordingly, if Duhani is not eligible for asylum, he inherently fails to satisfy the higher burden of withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(A); *see also Yu v. Ashcroft*, 364 F.3d 700, 703 n.3 (6th Cir. 2004). Similarly, under the CAT an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

IV.

The BIA found that even assuming Duhani had established past persecution, the preponderance of the evidence demonstrated there was no longer a well-founded fear of persecution due to changed conditions. Accordingly, neither Duhani's credibility nor the existence of past persecution is an issue on appeal. Instead, the only issue on appeal is whether the conditions in Kosovo have so changed that the IJ and BIA were correct in rejecting Duhani's claim in spite of his past persecution.

The Country Report notes persisting problems in Serbia and Montenegro, but generally describes a region with an improving human rights record and a country committed to improving overall conditions. (Country Report at 16.) ("Although some problems persisted, the [Montenegran] and Serbian governments' policies towards minorities improved greatly since Milosevic's removal from office.") Moreover, the Country Report chronicles a profound improvement in the conditions in Kosovo for ethnic Albanians since the United Nations (UN) arrived in 1999, and both the IJ and the BIA agreed that conditions have vastly improved. Duhani, however, emphasizes that the UN

8

Interim Administrative Mission in Kosovo (UNMIK) is "temporary, at best" and that Kosovo is "still subject to Serbian legal control." Duhani argues "[t]his means that the Serbian government has authority to impose strictures similar to those previously enforced during the ethnic cleansing operation of the Milosevic regime." While this potentially could be true, it is conjectural and does not rise to the level of a "well-founded fear of persecution."[1] *See* 8 C.F.R. § 1208.13(b)(1)(i)(A).

The only evidence presented by Duhani on the current conditions in Kosovo is an April 18, 2004, *New York Times* article that focuses on an attack on UN workers in Kosovo by a Jordanian who was also affiliated with the UN. Although the article notes a "wave of ethnic unrest" in Kosovo, it goes on to say the violence was largely a result of "ethnic Albanian mobs [that] attacked the province's minority Serb community." This implies only that the former abusers, the Serbs, have more to fear than ethnic Albanians like Duhani.

Because substantial evidence supports the holding of the IJ and BIA, we find that Duhani does not have an objectively reasonable fear of future persecution based on changed conditions in his native country.

V.

Under 8 C.F.R. § 1208.13(b)(1)(iii)(A), in the absence of a well-founded fear of future persecution, an alien may still be entitled to a discretionary grant of asylum if he or she has demonstrated compelling reasons for being unwilling or unable to return to the country arising out

---

[1]Duhani notes other justifications for his fear of persecution, but they are similarly conjectural and could be interpreted as actually evidencing improved conditions, rather than the opposite. (*See* Final Br. of Appellant at 18 (noting the possible withdrawal of American troops from Kosovo and the potential effect of the death of Slobodan Milosevic).)

the severity of the past persecution. The BIA concluded that the "underlying incidents in this case are not so severe as to constitute a compelling reason to grant asylum in the absence of a well-founded fear of persecution," and we agree.

Ultimately, Duhani asks this court to grant his claim based primarily "on humanitarian grounds." While Duhani certainly withstood abuse and mistreatment, his experience was not so severe as to warrant granting asylum in the absence of a well-founded fear of future persecution upon return to Kosovo.[2] Duhani presented no evidence or testimony that he still suffers from any particularly severe problems as a result of his past persecution, something this court has found relevant in upholding removal in similar cases under this provision. *See Khora v. Gonzales*, 172 F. App'x 634, 638-39 (6th Cir. 2006). Asylum is appropriate under this provision only when the past persecution was truly outrageous, and Duhani's experience simply does not rise to that level.[3] *See Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997) (finding relief under this provision appropriate only in "the rare case where past persecution is so severe that it would be inhumane to return the

---

[2]Duhani seeks relief only under 8 C.F.R. § 1208.13(b)(1)(iii)(A). Duhani does not specifically address subsection B of the provision, which offers relief to an alien that can show a "reasonable probability" that he or she "may suffer other serious harm upon removal" to his or her native country. The evidence of changed conditions in Kosovo, however, would also bar relief under this prong of the provision.

[3]The thrust of Duhani's reluctance to return to his native country seems based more on the lack of economic opportunity than fear of persecution: "There's nothing anymore. There's nothing to do for another ten or fifteen years. No life, no pay, no jobs, everything is destroyed. . . . Just to not take me back there because there is nothing to do." It is no doubt true that the Kosovar economy is still considerably compromised, but this is not grounds for relief under 8 C.F.R. § 1208.13(b)(1)(iii)(A).

alien to his native country even in the absence of any risk of future persecution . . . immediately returning German Jews to Germany after the destruction of the Nazi regime is one example").

VI.

For the foregoing reasons, we deny Duhani's petition for review.

11